UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SEBASTIAN MANGIAFICO, | : | |
| | : | |
| Plaintiff, | : | NO.   3:04cv74 (MRK) |
| | : | |
| v. | : | |
| | : | |
| RICHARD BLUMENTHAL, | : | |
| JOHN ARMSTRONG, and | : | |
| TERESA LANTZ, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OF DECISION**

Plaintiff Sebastian Mangiafico, a Captain in the Connecticut Department of Corrections ("DOC"), filed this action, under 42 U.S.C. § 1983 and 1988, against Defendants Richard Blumenthal, the Attorney General of the State of Connecticut, John Armstrong, a former Commissioner of the Connecticut Department of Corrections ("DOC"), and Teresa Lantz, the current DOC Commissioner.  *See* Amended Complaint [doc. # 9].  Attorney General Blumenthal moved to dismiss the claims directed against him on grounds of absolute immunity.  *See* Motion to Dismiss [doc. # 19].  The Court granted that motion, and the Second Circuit affirmed.  *See Mangiafico v. Blumenthal*, 358 F.Supp.2d 6 (D. Conn. 2005), *aff'd* 471 F.3d 391 (2d Cir. 2006).  Therefore, only two counts remain pending – Count I alleges that former Commissioner Armstrong violated Captain Mangiafico's right to equal protection under the Fourteenth Amendment; Count III alleges that Commissioner Lantz violated Captain Mangiafico's rights under the First Amendment. *See*  Third Amended Complaint [doc. # 74].  Commissioner Lantz and former Commissioner Armstrong (who for convenience will also be referred to as "Commissioner") now move for summary judgment.  *See*

1

Motion for Summary Judgment [doc. # 85]. For the reasons discussed below, the Court grants the Motion for Summary Judgment [doc. # 85].

**I.**

Since the facts in this case have been described in numerous proceedings, *see Mangiafico*, 358 F.Supp.2d 6; *Ziemba v. Armstrong*, 343 F.Supp.2d 173 (D. Conn. 2004) *rev'd in part* 430 F.3d 623 (2d Cir. 2005), the Court will assume familiarity with the facts and will only briefly review those facts that are most relevant to its decision on the Motion for Summary Judgment.

This lawsuit arises from an incident that occurred on August 12, 1998. On that date, Captain Mangiafico, who was at the time a Correctional Captain at the DOC's Osborn facility, organized a cell extraction team to extract an inmate, Duane Ziemba, from his cell. *See* Memorandum in Support of Defendants' Motion for Summary Judgment [doc. # 85] at 3. During this extraction, Mr. Ziemba suffered injuries, which he claimed were caused by Captain Mangiafico's excessive use of force. Mr. Ziemba filed an internal complaint with the DOC, *see id*. at 3, and DOC investigators concluded in a report sent to then-Commissioner Armstrong that Mr. Mangiafico had used excessive force, *see id*. at 4. After reviewing the available evidence and report, Commissioner Armstrong elected not to discipline Captain Mangiafico for use of excessive force, but the Commissioner did suspend Captain Mangiafico for five days for "misconduct and poor judgment." *See id*. at 5. Captain Mangiafico was notified of Commissioner Armstrong's decision on February 8, 1999. *See id*.

While Captain Mangiafico's disciplinary proceeding was pending, Mr. Ziemba filed a federal civil rights lawsuit against numerous parties, including Captain Mangiafico, arising from the cell extraction incident. *See Ziemba*, 343 F.Supp.2d 173. By letter sent on January 12, 2001, an Assistant Attorney General notified Captain Mangifiaco that the State of Connecticut would not

2

provide him with legal representation in connection with Mr. Ziemba's civil rights lawsuit. *See* Mem. in Supp. of Defs.' Mot. for Summ. J. [doc. # 85] at 6. In response to that decision, Captain Mangiafico filed administrative appeals and eventually brought this lawsuit against Attorney General Blumenthal on January 16, 2004. *See* Complaint [doc. # 1]. Captain Mangiafico later amended his Complaint [doc. # 1] to include Commissioners Armstrong and Lantz as defendants. *See* Am. Compl. [doc. # 9] on February 17, 2004.

Also during this period, Commissioner Lantz, who had succeeded Commissioner Armstrong in March 2003, decided to transfer Captain Mangiafico to another DOC facility. The timing of Commissioner Lantz's decision is relevant to Captian Mangiafico's claims here. Commissioner Lantz claims that in December 2003 or January 2004, she discussed the possibility of transferring Captain Mangiafico with Brian Murphy, who was the Deputy Commissioner of the DOC at the time. Mem. in Supp. of Defs.' Mot. for Summ. J. [doc. # 85] at 6-7. Then, on or about February 3, 2004, Deputy Commissioner Murphy provided Commissioner Lantz with a memo in which he recommended five transfers, including Captain Mangiafico's. *See id*. at 7. Commissioner Lantz concurred with the Deputy Commissioner's recommendation and on February 6, Deputy Commissioner Murphy informed Captain Mangiafico of the transfer. *See id*.

Captain Mangiafico alleges that Commissioner Armstrong violated his Fourteenth Amendment right to equal protection under the law by suspending him for five days and then later "preventing [him] from exhausting his administrative remedies, removing him from the DOC inner circle, precluding him from consideration for promotion, and [being involved] in the denial of legal representation in the Ziemba lawsuit." Plaintiff's Opposition to Defendants' Motion for Summary Judgment [doc. # 94] at 14. Captain Mangiafico's Fourteenth Amendment claim against

3

Commissioner Armstrong is a "class of one" Equal Protection claim. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). With respect to Commissioner Lantz, Captain Mangiafico asserts that Commissioner Lantz was made aware of his lawsuit against Attorney General Blumenthal before she decided to transfer him to another DOC facility and that the transfer was in retaliation for his lawsuit in violation of his rights under the First Amendment.

## II.

The summary judgment standard is a familiar one. Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(b). A genuine issue of fact exists when "a reasonable jury could return a verdict for the nonmoving party," and "[a] fact is 'material' . . . if it 'might affect the outcome of the suit under the governing law.'" *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir.2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986), and the Court must draw all ambiguities and inferences in favor of Plaintiff, *see Anderson*, 477 U.S. at 255. Nonetheless, "a plaintiff must provide more than conclusory allegations . . . to defeat a motion for summary judgment." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50.

### III.

### A.

Turning first to the claims against Commissioner Armstrong, Commissioner Armstrong argues that Captain Mangiafico's claims should be dismissed on statute of limitations grounds. Both parties agree that in this § 1983 lawsuit, the Court should apply Connecticut's three-year statute of limitations for tort actions. *See Walker v. Jastremski*, 430 F.3d 560, 562 (2d Cir. 2005). "While state law supplies the statute of limitations for claims under § 1983, federal law determines when a federal claim accrues. The claim accrues when the plaintiff knows or has reason to know of the harm." *Connolly v. McCall*, 254 F.3d 36, 41 (2d Cir. 2001).

Captain Mangiafico's five-day suspension, which is the principal focus of his claims, occurred in February 1999, and this lawsuit was not filed until January 16, 2004, well outside the three-year statute of limitations. Nevertheless, Captain Mangiafico argues that the statute of limitations should be tolled under the continuing violations doctrine. Captain Mangiafico asserts that the continuing violations doctrine applies because, following his suspension, Commissioner Armstrong engaged in conduct "preventing [him] from exhausting his administrative remedies, removing him from the DOC inner circle, precluding him from consideration from promotion, and [being] involve[d] in the denial of [Mr. Mangiafico's] legal representation in the Ziemba lawsuit," Pl.'s Opp. to Defs.' Mot. for Summ. J. [doc. # 94] at 14.

While the continuing violations doctrine is typically discussed in the context of Title VII claims, *see, e.g.*, *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110-13 (2002), it appears that the doctrine is equally applicable to § 1983 claims that arise in an employment context, as Captain Mangiafico's claims do here. *See Washington v. County of Rockland*, 373 F.3d 310, 317-18 (2d Cir.

2004) (applying the continuing violations doctrine to a § 1983 claim alleging malicious prosecution by an employer); *see also Hildebrandt v. Illinois Dept. of Natural Res.*, 347 F.3d 1014, 1036 n.18 (7th Cir. 2003) (noting that although the Supreme Court's decision in *Morgan*, 536 U.S. 101 discussed "the continuing violation doctrine in the Title VII context, [it] applies equally to § 1983 cases").[1] For the continuing violation doctrine to apply, Captain Mangiafico would have to show that the acts of Commissioner Armstrong that form the basis of this action were not discrete acts but rather part of a continuing course of conduct, *see Morgan*, 536 U.S. at 115 (holding that a continuing violation "cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own.") *and* that at least one of Commissioner Armstrong's acts occurred within the three-year limitations period, *see Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 220 (2d Cir. 2004) ("To bring a claim within the continuing violation exception, a plaintiff must at the very least allege that

---

[1] Typically, a federal court "borrow[s] not only a state's [statute of] limitations period but also its 'tolling rules.'" *Bd. of Regents v. Tomanio*, 446 U.S. 478, 484-86 (1980). However, whether the Court should apply the federal or state tolling doctrine in a § 1983 action appears to be an unsettled question of law. *See Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002) ("First, it is not clear . . . whether in section 1983 actions we are to borrow only a state's 'tolling rules' that have been incorporated into state statutes or, in addition, other aspects of a state's common law concerning avoidance of a statute of limitations that either have been labeled 'tolling' or serve an equivalent function, i.e., to relieve the plaintiff from the bar of a statute of limitations. Second, it is not clear whether state or federal law applies where the circumstances governing accrual are similar, if not identical to, circumstances pertinent to a state tolling rule, a recurring issue in cases where tolling is sought."). Nonetheless, because the state tolling doctrine that would be relevant here (the continuing course of conduct doctrine), *see Neuhaus v. DeCholnoky*, 905 A.2d 1135, 1143 (Conn. 2006), and the comparable federal tolling doctrine (the continuing violations doctrine), *see Morgan*, 536 U.S. 101, are so similar, *see Book v. Lupinacci*, No. 3:04CV1661 (PCD), 2006 WL 1182275, at *10 (D. Conn. Apr. 28, 2006) (analogizing the requirements of the two tolling doctrines), the Court concludes that Captain Mangiafico's claims cannot be tolled under either doctrine.

one act of discrimination in furtherance of the ongoing policy occurred within the limitations period."). Captain Mangiafico has not satisfied either requirement.

First, both the Second Circuit and the Supreme Court have made it clear that "[d]iscrete discriminatory acts are time-barred, notwithstanding the fact that 'they are related to acts alleged in timely filed charges, 'if they fall outside of the limitations period.'" *Forsyth v. Fed'n Employment and Guidance Serv.*, 409 F.3d 565, 527 (2d Cir. 2005) (quoting *Morgan*, 536 U.S. at 113). Discrete acts are "easy to identify" such as "termination, failure to promote, denial of transfer, or refusal to hire." *Morgan*, 536 U.S. at 114. Here, there can be no question that Captain Mangiafico's suspension is a discrete act that cannot form the basis of a tolling request based upon the continuing violation doctrine. *See Reyes v. City College of the City Univ. of N.Y.*, No. 03 Civ. 3132(RLC), 2005 WL 2990637, at *2 (S.D.N.Y. Nov. 8, 2005) (finding that a three-day suspension from work was a discrete act). Commissioner Armstrong's actions in allegedly denying Captain Mangiafico promotion are similarly discrete acts. *See Morgan*, 536 U.S. at 114. Therefore, Captain Mangiafico cannot use the continuing violation doctrine to sweep into this lawsuit discrete events and acts, such as his suspension, that fall outside the three-year limitations period.

Second, even assuming that Commissioner Armstrong was engaged in a continuing course of unlawful conduct, at least one of the acts in the alleged continuing course of conduct would have to have occurred on or after January 16, 2001 (three years from the filing of this lawsuit on January 16, 2004). *See Patterson*, 375 F.3d at 220. Putting to one side for the moment the decision to deny Mr. Mangiafico legal representation – which he claims he received notice of in February 2001 – Captain Mangiafico offers no evidence to suggest that he became aware of the other alleged conduct by Commissioner Armstrong on or after January 16, 2001. Captain Mangiafico would certainly have

7

been aware of his suspension when it occurred in February 1999. He also would have been aware of any attempt to prevent him from seeking administrative remedies prior to April 1, 1999 when his right to administratively appeal his suspension expired, and also well aware of any effort to exclude him from activities of the alleged "inner circle" at DOC. *See* Mem. in Supp. of Defs.' Mot. for Summ. J. [doc. # 85] at 10.

In fact, in opposing summary judgment, Captain Mangiafico provides the Court with no dates for the alleged continuing conduct by Commissioner Armstrong except for stating that "[t]he last act of discrimination took place in or about February 2001, when [Mr. Mangiafico] received notice from the Attorney General's office regarding the denial of representation." Pl.'s Opp. to Defs.' Mot. for Summ. J. [doc. # 94] at 14. It is certainly true that Captain Mangiafico received notice of the denial of legal representation in the Ziemba case within the three-year limitations period. However, there is insufficient evidence to allow a reasonable juror to conclude that Commissioner Armstrong participated in the denial of legal representation.

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006). In *Farrell*, the Second Circuit held that even though the defendant was not personally involved in imposing a certain condition on the plaintiff, he became personally involved when he enforced the condition. *See id.* No analogous allegation exists here. The only evidence Captain Mangiafico cites to in support of his claim that Commissioner Armstrong was personally involved in the decision to deny him with legal representation is a letter written to Attorney General Blumenthal by a local union president, Catherine Osten, inquiring about the decisions to not indemnify certain prison guards. *See* Pl.'s Opp. to Defs.' Mot. for Summ. J. [doc.

8

# 94] at 14.  In her letter, Ms. Osten wrote that the union "would like to know who makes the decision to not indemnify (it is our understanding that in these cases the decision was made by Commissioner John Armstrong)."  *Id*. Ex. 3.  Ms. Osten's letter appears to be based on rank speculation and as hearsay, would in any event be inadmissible at trial.  Captain Mangiafico offers no other evidence to suggest that Commissioner Armstrong had any role whatsoever in the decision to deny Captain Mangiafico legal representation.  In fact, the letter sent by the Attorney General's office informing Captain Mangiafico that he would not receive legal representation stated that "this Office has concluded that . . . we will not be providing representation to you in the above matter."  Mem. in Supp. of Defs.' Mot. for Summ. J. [doc. # 85] Ex. 6.  Because there is no admissible evidence that would permit a reasonable jury to find that Commissioner Armstrong was personally involved in the denial of Captain Mangiafico's legal representation in the Ziemba case, that event cannot provide the timely anchor on which Captain Mangiafico can attach the time-barred conduct he alleges against Commissioner Armstrong.  Accordingly, the Court concludes that Captain Mangiafico's claim against Commissioner Armstrong is barred by the statute of limitations.

Even if Captain Mangiafico's claims against Commissioner Armstrong were not barred by the statute of limitations, the Court would still conclude that he has not submitted evidence that would permit a reasonable jury to conclude that he has satisfied the standards for a "class of one" claim under *Olech*.  The Second Circuit has stated that

> to succeed on a class-of-one claim, a plaintiff must establish that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference

9

in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake.

*Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006). This Court has also noted that the burden is on the plaintiff in an *Olech* claim to "demonstrate that [he was] treated differently than someone who is '*prima facie* identical in all relevant respects.'" *Piscottano v. Murphy*, No. 3:04CV682 (MRK), 2005 WL 1424394, at *8 (D. Conn. June 9, 2005) (quoting *Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005)). Taking all of the evidence in the light most favorable to Captain Mangiafico, it is nonetheless clear that he has not satisfied that burden.

In an effort to offer the Court examples of similarly situated individuals who were treated differently, Captain Mangiafico claims (1) that "most if not all supervisors . . . have been involved in cell extractions and/or use of four point restraints" and that no other supervisor has been similarly disciplined; and (2) that he was "unique in that he was chosen by [Commissioner] Armstrong as the first and only supervisor to be disciplined for 'supervisor involvement' during a cell extraction and/or four point restraint in order to avoid civil liability on the part of the DOC. No such policy exists at the DOC." Pl.'s Opp. to Defs.' Mot. for Summ. J. [doc. # 94] at 12.

However, despite ample opportunity, Captain Mangifiaco has not provided the Court with the name of a single similarly situated supervisor; nor has he offered facts that would permit a reasonable juror to find that Captain Mangifiaco and another supervisor were *prima facie* identical in all relevant respects. Captain Mangifiaco's attempt to demonstrate discrimination by claiming that he was the first person to be disciplined for supervisor involvement in a cell extraction is reminiscent of plaintiffs' unsuccessful claims in *Piscottano*. There, plaintiffs were correction officers who

claimed they were discriminated against because they were members of a motorcycle group. *See Piscottano*, 2005 WL 1424394, at *1. As proof of their discrimination, they asserted that the DOC had "never before applied" a certain rule "to forbid association with any particular club." *See id.* at *9. The Court held that such evidence "alone will not sustain Plaintiffs' burden on summary judgment." *See id.* (citing *3883 Connecticut LLC v. Dist. of Columbia*, 336 F.3d 1068, 1075 (D.C. Cir.2003) (affirming grant of summary judgment on *Olech* claim where plaintiffs showed only that defendants "had never before required an [Environmental Import Statement] for an apartment building project"). So, too , here the Court concludes that Mr. Mangifiaco's allegation that he was discriminated against simply because he was the first person to be subjected to discipline for supervisor involvement in a cell extraction is insufficient as a matter of law.

### B.

The Court also finds no merit in Captain Mangiafico's First Amendment claim against Commissioner Lantz. Captain Mangifiaco alleges that she violated his rights under the First Amendment by transferring him to another facility in retaliation for the filing of this lawsuit against Attorney General Blumenthal. To prevail on a First Amendment retaliation claim, Captain Mangiafico must provide evidence that would permit a reasonable jury to conclude that: (1) he engaged in constitutionally protected speech because he spoke as a citizen on a matter of public concern; (2) he suffered an adverse employment action; and (3) his speech was a 'motivating factor' in that adverse employment decision. *See Skehan v. Village of Mamaroneck*, 465 F.3d 96, 106 (2d Cir. 2006). Assuming *arguendo* that Captain Mangiafico has satisfied the first two requirements,[2]

---

[2] Because of the Court's conclusion on the causal connection requirement, it need not, and does not, reach Commissioner Lantz's argument that Captain Mangiafico's transfer did not constitute an adverse employment action, *see* Mem. in Supp. of Defs.' Mot. for Summ. J. [doc. # 85] at 21-25;

he offers no evidence, outside of his own conclusory remarks and speculation, that his transfer was in any way motivated by his lawsuit against the Attorney General.

To review the chronology, Commissioner Lantz states that she discussed the possible transfer of Captain Mangiafico with Deputy Commissioner Murphy in December 2003 or January 2004. *See* Mem. in Supp. of Defs.' Mot. for Summ. J. [doc. # 85] at 6-7. Captain Mangifiaco filed his lawsuit against Attorney General Blumenthal only on January 16, 2004. Deputy Commissioner Murphy recommended Captain Mangifiaco's transfer on February 3, 2004, *see id*. at 7, and Commissioner Lantz ordered the transfer on February 6. Captain Mangiafico did not add Commissioner Lantz as a party to the lawsuit until February 17, 2004 and, according to Commissioner Lantz, it was at this point that she first became aware of Captain Mangiafico's lawsuit.

As the Second Circuit has explained "[t]o satisfy the causal connection requirement of the prima facie case . . . plaintiffs must aver some tangible proof demonstrating that their protected speech animated [the adverse employment decision]. They may not rely on conclusory assertions of retaliatory motive." *Washington*, 373 F.3d at 321. Here, the only evidence Captain Mangifiaco offers is conclusory assertions of retaliatory motive. Captain Mangiafico claims that he told Deputy Commissioner Murphy that he intended to file a lawsuit in regards to the denial of his legal representation. *See* Pl.'s Opp. to Defs.' Mot. for Summ. J. [doc. # 94] at 5. Captain Mangiafico next alleges that Deputy Commissioner Murphy relayed this message to Commissioner Lantz. *See id*. Deputy Commissioner Murphy denies that Captain Mangiafico told him of his intent to sue, *see* Supplemental Affidavit of Brian K. Murphy [doc. # 100-4] ¶¶ 7-8, and any allegation that Deputy

---

Reply Memorandum of Law in Support of Defendants' Motion for Summary Judgment [doc. # 100] at 7-9, and that he did not engage in constitutionally protected speech, *see* Mem. in Supp. of Defs.' Mot. for Summ. J. [doc. # 85] 25 n.3.

Commissioner Murphy relayed such a message to Commissioner Lantz is rank speculation. Captain Mangiafico's claim that Commissioner Lantz would have learned of his lawsuit through the DOC "rumor mills," *see* Pl.'s Opp. to Defs.' Mot. for Summ. J. [doc. # 94] at 6, is similarly speculative. Finally, Captain Mangiafico argues that Commissioner Lantz transferring him "only days after [Captain Mangiafico] filed his lawsuit" could not be mere coincidence. *Id*. However, Captain Mangiafico offers no "tangible proof" that Commissioner Lantz knew about his lawsuit against the Attorney General prior to her decision to transfer him to another facility. *Cf. Washington*, 373 F.3d at 321 (affirming grant of summary judgment since plaintiff offered insufficient evidence to prove causality in First Amendment retaliation claim). Because the Court finds that Captain Mangiafico has failed to establish a *prima facie* case of retaliation under the First Amendment, the Court grants the motion for summary judgment as to Count III.[3]

### IV.

In sum, the Court GRANTS the Defendants' Motion for Summary Judgment [doc. # 85] and **the Clerk is directed to close the file**.

IT IS SO ORDERED

/s/      Mark R. Kravitz    
United States District Judge

Dated at New Haven, Connecticut: **January 30, 2007.**

---

[3] Having found that neither Commissioner Armstrong nor Lantz violated Captain Mangiafico's constitutional rights, the Court need not and does not reach the question of whether the Commissioners would be entitled to qualified immunity, as they assert.